**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

SYLVIA HOPSON                                                                                                          PLAINTIFF
ADC #705131

V.                                              NO: 5:15CV00062 JLH/PSH

MICHELLE GLOVER *et al*                                                                               DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATION**

**INSTRUCTIONS**

The following Proposed Findings and Recommendation have been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

**I. Relevant Facts**

Plaintiff Sylvia Hopson, an inmate at the Arkansas Department of Correction's Hawkins Center for Women, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on February 25, 2015. Defendants are Sgt. Michelle Glover and Advanced Practice Registered Nurse (APRN) Maria Lane, both of the Hawkins Unit.

According to Hopson's complaint, she suffers from Lupus and arthritis, which cause her

pain.[1] She states that due to her conditions, an extra mattress and authorization to shower as needed are medically required because they help alleviate her pain. ARPN Lane has been employed with the ADC for several years, and is familiar with Hopson's condition.

The medical records indicate that Hopson presented to the health services office on April 5, 2014, seeking renewal of a "shower as needed" prescription as well as renewal of her medication prescriptions.[2] The staff member on duty told Hopson she would be referred "to the provider for this unit for evaluation for the need for [the shower] script." Doc. No. 39-1, page 1. Medical encounter notes indicate that APRN Lane saw Hopson on April 22, 2014. Lane noted that Hopson "reports she is here to have her scripts renewed.... Reports she has a hx of lupus, and arthritis and her bones get cold and she has to get in a warm shower." *Id.*, page 2. Lane informed Hopson that a prescription "to shower whenever she wants is not appropriate." *Id.*

Lane saw Hopson again on September 9, 2014. According to Lane's notes, Hopson "is here because she is hurting. Reports she has arthritis bad. States she has trouble with sitting more than an hour. Reports she wants an extra mattress because she aches...." *Id.*, page 3.[3] Lane "made [Hopson] aware that lupus and arthritis are not an indication for an extra mattress." *Id.*

On October 30, 2014, Hopson was seen at sick call and requested to see a doctor to get her prescription for Robaxin renewed. *Id.*, at 4. She was referred, and saw Dr. James Shelton the

---

[1]Hopson actually made no allegations in her complaint, but did incorporate by reference a grievance she filed.

[2]The medical facts set forth herein are found in Hopson's medical records at docket entry number 39-1. The records do not indicate when, where, or from whom Hopson initally obtained a "shower as needed" prescription. In the grievance Hopson attached to her complaint, she claimed she was given a one year authorization to shower as needed by Dr. Reichard on May 9, 2014, after Lane refused Hopson such an authorization in April 2014. Doc. No. 1, page 5.

[3]Hopson also had a sore with drainage for which she sought medical care.

following day.  According to Lane, Shelton is a traveling physician who was not assigned to the Hawkins unit, was unfamiliar with Hopson, and was not Hopson's regular provider.  Doc. No. 39-2, page 2.  Shelton's notes indicate that Hopson requested renewal of her medication and "wants extra mattress."  Hopson presented "with an old script" for one.[4]  Shelton authorized an extra mattress, and also added an authorization to shower as needed.  Shelton did not state in his notes that his authorizations were based on medical necessity.  Doc. No. 39-1, pages 5-6.  Lane terminated the extra mattress authorization on November 4, 2014.  *Id.*, page 9.  According to Hopson, on that same day, defendant Glover removed Hopson's extra mattress.  Doc. No. 10.

On November 18, 2014, Hopson was seen by Lane at sick call.  Lane documented that Hopson "[r]eports she is coming to get her scripts back that we took from her.  Also states that she becomes sick with the pork and wants a pork free diet."  Doc. 39-1, page 10.  Lane further documented that she told Hopson a pork free diet was not medically necessary, an extra mattress was not medically indicated, and she "may shower whenever she wants script is not medically indicated."[5] *Id.*

Lane next saw Hopson regarding these issues on February 17, 2015 for follow up care.  Lane's notes read as follows: "Was asked to come down here to discuss her scripts.  Reports she does not have one allowing her to shower when needed.  Reports that she does have arthritis, a hx of lupus.  Reports that she does hurt.  States she does walk around the pod and to chow.  Reports that the only ones she has now are the ones restricting her activity."  Id., page 11.  Lane noted that

---

[4]The medical records attached to the motion for summary judgment do not reference such a prescription, when it was issued, or by whom.

[5]In her deposition, Hopson stated that she can shower multiple times between 4:00 p.m. and 10:30 p.m. without a special authorization or prescription.  Doc. No. 39-5, pages 7 - 11.

Hopson walks with a cane. She also stated that Hopson "is in understanding of need for exercise, and that there is not a medical need for showering as she wants, and there is not a medical need for an extra mattress." *Id.*

On April 10, 2015, Melanie Jones-Foster, M.D., the Medical Director of the Unit, saw Hopson for her ongoing complaints.[6] The report prepared by Jones-Foster states:

> 53 yo bf, h/o HTN and SLE; asked to review her case/chart by NP. This patient has no specific complaints, but has made frequent requests for special provisions - shoes, extra blanket, shampoo, extra mattress, no lifting/working/sitting/, cane. Unfortunately, most of these have been provided over the past two years and she is now quite angry that most of these need to be discontinued. She is beligerent [sic] and uncooperative during my history today. I have explained that as a patient's condition and needs change, it is appropriate to review and adjust treatment plans. Pt has also been taking long term muscle relaxants, but cannot tell me what the indication is, just says "my hands cramp sometimes". Again, explanations are met with resistance and hostility. Pt is morbidly obese, sedentary; uses cane for transfers on compound but has no other physical limitations or disabilities. There is no medical indication for extra or egg crate mattress. She does not require showers to "warm her bones" and does not require time to sit or lie under covers whenever she chooses. I have encouraged increased activity, healthy diet, and weight loss so that she can play more active role in her health care.

*Id.*, page 12.

Lane filed a motion for summary judgment, a brief in support, and a statement of facts on May 26, 2016. Doc. Nos. 37-39. Glover filed a motion for summary judgment, a brief in support, and a statement of facts on May 30, 2016. Doc. Nos. 40-42. Hopson filed a response to both motions on July 12, 2016. Doc. No. 44.

---

[6] It appears that the NP (Nurse Practitioner), presumably Lane, asked Jones-Foster to review Hopson's case/chart. Doc. No. 39-1, page 12.

Lane claims in her summary judgment motion that Hopson's complaints against her do not constitute a constitutional deprivation as the undisputed facts fail to show deliberate indifference to a serious medical need. Lane attached an affidavit of Dr. Melanie Jones, who is identified in the medical record as Dr. Jones-Foster. Jones, who identifies herself as Hopson's treating physician, opines that the authorizations given Hopson by traveling physician Shelton on October 31, 2014 were not medically necessary. Jones states that Lane's treatment decisions not to issue authorizations for an extra mattress and to shower as needed were medically appropriate, and consistent with sound medical practices. Doc. No. 39-3, pages 2 - 3.

In her summary judgment motion, defendant Glover states that Hopson failed to state in what capacity she is suing Glover, and therefore it is assumed that her claims are made against Glover in her official capacity. As such, Glover asserts she is entitled to sovereign immunity. Glover also claims qualified immunity should the Court construe Hopson's complaint to allow for individual capacity claims, because no constitutional violation occurred. In that regard, Glover asserts that she was not deliberately indifferent to Hopson's medical needs when Hopson's extra mattress was confiscated under her authority. Doc. No. 41.

For the reasons set forth below, both summary judgment motions should be granted.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317,

321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Analysis

Hopson advances an Eighth Amendment claim that the defendants were deliberately indifferent to her serious medical needs. To succeed with such a claim, a plaintiff must allege and prove that: (1) she had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Hopson is required to present evidence that "the course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference in violation of [the] [E]ighth [A]mendment right to be free from cruel and unusual punishment." *Dulany*, 132 F.3d at 1243 (quoting *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). "The failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's

health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). The Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

**Defendant Lane**

Lane argues Hopson's claims amount to nothing more than a disagreement with medical care that does not rise to the level of a constitutional violation. The Court agrees. The medical records establish that Lane evaluated Hopson's medical condition on several occasions, and made a medical judgment that Hopson's condition did not warrant authorizations for an extra mattress and to shower as needed. Lane's judgment was medically appropriate and consistent with sound medical practices, according to Dr. Jones, who reviewed the medical records and is Hopson's treating doctor.

Hopson has not offered evidence establishing a question of fact. Traveling doctor Shelton's orders authorizing an extra mattress and showering as needed do not establish that Shelton, who was not familiar with Hopson, made a medical judgment that such authorizations were medically necessary.

Hopson, though, points to a May 9, 2014 authorization by Dr. Reichard allowing her to shower as needed. Doc. No. 1, page 5. Although such an order is not part of the record before the Court, we will assume that it existed for purposes of this motion. Assuming that Reichard (or Shelton, for that matter) issued a shower authorization based on a finding of medical necessity in May of 2014, Hopson still fails to establish deliberate indifference on the part of Lane. The record establishes that Lane, an Advanced Practice Registered Nurse, evaluated Hopson at every visit,

discussed her medical needs, and explained her orders to Hopson. Dr. Jones, Hopson's treating physician, concurs with Lane's evaluation and treatment decisions. At most, Hopson can demonstrate a disagreement among medical providers, which is insufficient to establish a constitutional violation. *See Long v. Nix*, 86 F.3d 761, 765-66 (8th Cir.1996) (if medical experts disagree over appropriate course of treatment, prison officials do not violate Eighth Amendment when they refuse to implement inmate's requested treatment). Lane's motion for summary judgment should be granted.

**Defendant Glover**

Glover first asserts she is entitled to sovereign immunity. She states that because Hopson's complaint is silent about whether she is suing Glover in her official or individual capacity, it must be construed as advancing official capacity claims only. Hopson seeks to recover money damages only. Thus, Glover claims entitlement to sovereign immunity. The Court agrees with this analysis. Hopson's silence as to the capacity compels the Court to interpret her complaint to be against Glover in her official capacity only. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). A suit against a state official acting in her official capacity is in essence a suit against the state itself. Because Hopson seeks only monetary damages, her claims are barred by Eleventh Amendment to the United States Constitution. *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989).

Even if Hopson's complaint is construed to include a claim against Glover in her individual capacity, Glover is still entitled to qualified immunity and summary judgment because there is no constitutional violation. Qualified immunity protects officials acting within the scope of their duties when their conduct does not violate "clearly established statutory or constitutional rights of which

a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts consider two questions in determining if a defendant is entitled to qualified immunity: (1) whether the facts, construed in the light most favorable to the plaintiff, establish the violation of a constitutional right, and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Hopson's claim against Glover is an Eighth Amendment deliberate indifference medical claim. "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment...." *Dulany*, 132 F.3d at 1239 (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)).

Although there is no dispute that Hopson's extra mattress was confiscated under Glover's authority, Hopson has failed to establish that Glover intentionally denied or delayed access to medical care, or that she intentionally interfered with prescribed treatment. In fact, the undisputed facts establish that Glover removed Hopson's extra mattress after the authorization for it was terminated. With no authorization, the extra mattress constituted contraband. Doc. No. 42-2, page 6. Glover's actions do not establish a constitutional violation. Thus, she is entitled to qualified immunity.

### IV. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. The motions for summary judgment filed by defendants Maria Lane and Michelle Glover (Doc. Nos. 37 & 40) be GRANTED, and plaintiff Sylvia Hopson's complaint be DISMISSED WITH PREJUDICE.

2.   The Court certify that an *in forma pauperis* appeal taken from the order and judgment dismissing this action is considered frivolous and not in good faith.

DATED this 29th day of December, 2016.

_____
UNITED STATES MAGISTRATE JUDGE